CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED
2018 SEP 18 AM 9: 17
DEPUTY CLERK

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| VICTORIA G.,[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:17-CV-180-BL |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the decision of the Commissioner of Social Security, who denied her application for disability insurance benefits under Title II of the Social Security Act. The Senior United States District Judge reassigned the case to this Court pursuant to 28 U.S.C. § 636(c). The parties have unanimously consented to proceed before a United States Magistrate Judge. After considering the pleadings, briefs, and administrative record, this Court affirms the Commissioner's decision and dismisses Plaintiff's claim.

### I. STATEMENT OF THE CASE

Plaintiff filed an application for DIB on November 9, 2011, alleging onset of disability as of August 15, 2011. That claim was denied initially on January 4, 2012 and after reconsideration on February 16, 2012. She then requested a hearing in front of an ALJ, which was held on May 16, 2013. The ALJ issued a decision on April 7, 2014 finding she was not disabled. The Plaintiff

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies the Plaintiff only by first name and last initial.

then applied to the Appeals Council for review, and the Appeals Council vacated the decision and remanded the case for a second hearing. The second hearing was heard on October 3, 2016, followed by a December 7, 2016 decision again finding the Plaintiff not disabled.

Specifically, the second decision found that she had not engaged in substantial gainful activity since the alleged onset date. (Doc. 17-1, 25). At step two, the ALJ assessed Plaintiff with the severe impairments of psoriatic arthritis and degenerative disc disease of the lumbar spine. (Doc. 17-1, 34). In the third step, the ALJ found those severe impairments did not meet and were not equivalent to any listed impairments. (Doc. 17-1, 34). The step three analysis continued, with the ALJ finding the Plaintiff retained the residual functional capacity for sedentary work with modifications to her ability to understand and follow simple instructions, make simple decisions, concentrate for extended periods, and respond appropriately to changes in work routine. (Doc. 17-1, 34). At step four, the ALJ determined she could not return to past relevant work, and at step five found that there were sufficient jobs the plaintiff could perform in the national economy and therefore found her not disabled. (Doc. 17-1, 34-35).

Plaintiff again applied to the Appeals Council, which denied review on September 25, 2017. Therefore, the second ALJ's decision is the Commissioner's final decision and properly before the court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005) ("[T]he Commissioner's final decision includes the Appeals Council's denial of [a claimant's] request for review.").

## II. FACTUAL BACKGROUND

According to her pleadings, testimony, and the administrative record, the Plaintiff was 45 years old and living with her husband and minor child at the time of the second administrative

hearing. She has experience working as a nurse in various capacities, and believes her physical and mental impairments render her disabled under the Act.

### III. STANDARD OF REVIEW

A person is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(c)(a)(3)(A), 423 (d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b).

To evaluate a disability claim, the Commissioner follows a

> five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.

*Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

This court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings and whether

the Commissioner applied the proper legal standards. *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015) (quoting *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Newton*, 209 F.3d at 452.

The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton*, 209 F.3d at 452.

## IV. DISCUSSION

The Plaintiff raises three issues on appeal. She claims the ALJ improperly considered evidence offered by a medical expert, the ALJ's determination that depression and anxiety did not qualify as severe impairments was in error, and that the ALJ should have considered her fibromyalgia as a medically determinable impairment.

### A. Medical Expert

The Plaintiff objects that the medical expert used by the ALJ in this case was party to an alleged improper conversation with a different ALJ on a different case several years ago. However, there is no contention that there was any impermissible contact between the ALJ and medical expert in this case. Despite lengthy discussion of the importance of impartiality and objectivity, Plaintiff provides no reason to question the process afforded to her in this case. There is no

argument provided that the ALJ or medical expert in this case engaged in improper activities or demonstrated bias, but rather a claim that any case in which this medical examiner provides evidence is automatically in violation of due process and invalid. Absent evidence that the ALJ or medical expert violated legal standards in her case, the Plaintiff's attorney's complaints about prior encounters with this medical expert have no bearing here.

**B. Severe Impairments**

The Plaintiff next alleges that the "ALJ failed to consider ... the limitations that [she] faces due to her depression and anxiety." (Doc. 22, 21). As explained above, the step two burden to show a severe impairment is the Plaintiff's. Briefly, the standard for proving a severe impairment is to show it would impact the ability to work, is documented by an acceptable medical source, and endures for at least twelve consecutive months. *See Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985); *See also* 20 C.F.R. § 404.1529(a) and § 404.1521.

Plaintiff points to various references in the record indicating her alleged mental impairments, namely:

1. a self-report of depression at the ALJ hearing;
2. a self-report of being "massively depressed[;]"
3. an examining physician's expectation that "mental emotional disorder would likely improve when ... pain ... is better managed[;]"
4. a hospital record indicating a single episode of major depressive disorder;
5. her primary care physician's reference to a recent diagnosis for "anxiety induced dystonia[;]"
6. a brief reference to anxiety and depression in an evaluation;

> 7. and a report questioning whether depression, anxiety, or stress may be a root cause of other symptoms.

(Doc. 22, 20-21) (citing various record sources). To meet her burden at this stage, the Plaintiff must show that no reasonable person could look at this evidence and determine she did not have mental impairments likely to impact her ability to work for twelve continuous months. She has not met that burden. Many of these reports note that the alleged mental impairments mainly present physical symptoms the ALJ ultimately considered independent of their possible etiology in these mental impairments. The Plaintiff does not show how the mental impairments might present other limits in her ability to work. Furthermore, these reports are sufficiently spread out in time to make a determination about the continuous twelve-month period required by the regulations unlikely.

The ALJ discussed the Plaintiff's mental health conditions at length, and the Plaintiff points only to isolated phrases from medical opinions that she suffers from depression, anxiety, or other mental ailments, but does not show that these hinder her ability to work beyond the physical manifestations directly addressed by the ALJ. This is not, therefore, actually an allegation that the ALJ improperly applied the law to find some impairments not severe, but rather a request for this Court to second-guess the reasoned evidentiary decision of the ALJ. As noted above, this Court gives deference to such decisions and will not disturb decisions made on those grounds except when they are not based in substantial evidence. Here, Plaintiff has not shown that there is little or no evidence supporting the decision made by the ALJ, and so this claim is insufficient.

### C. Fibromyalgia

Plaintiff finally contends that the ALJ's determination that her fibromyalgia did not qualify as a medically determinable impairment under SSR 12-2p was the result of an incorrect application of legal standards. (Doc. 24, 9). In the decision, the ALJ accurately set out the two standards in

SSR 12-2p for determining fibromyalgia as a medically determinable impairment, and concluded the opinion offered by Plaintiff's physician "does not satisfy any of the criteria above. She simply cited 'multiple tender points', and a few other symptoms." (Doc. 17-1, 32). The Plaintiff here, then, is not alleging that the ALJ applied the wrong standard, but rather that the decision after applying the correct standard is erroneous. Such a claim is, as above, subject to deference and will be overturned only if unsupported by substantial evidence.

Plaintiff points to a report from Dr. Koduru, which lists fibromyalgia as one of three diagnoses for which she is receiving treatment. (Doc. 17-1, 1050). This report is explicitly solicited in preparation for disability proceedings, and takes the form of a checklist. Dr. Koduru declines to opine on diagnoses outside her specialty as a rheumatologist, and refers only generically to a "copy of medical records" as the basis for her answers on this form. (Doc. 17-1, 1051). Plaintiff also points to brief references by other physicians to a fibromyalgia diagnosis, and purports to show all six of the required symptoms for showing the medically determinable impairment of fibromyalgia. However, her burden is not to show that there is some evidence that might lead a different decisionmaker to find differently on this issue, but rather that there is insufficient evidence supporting the decision the ALJ here actually made. Merely presenting an alternative reading of the record evidence without showing that there is minimal or no evidence supporting the decision does not serve to prove her claim.

Furthermore, although the ALJ did not find the fibromyalgia was a medically determinable impairment, he did set out an RFC which considered, among other factors, "the extent, frequency, and duration of symptoms[.]" (Doc. 17-1, 125). Plaintiff has not argued that, even if her fibromyalgia were classified as a medically determinable impairment, it would result in any changes to the RFC assessed. Although the ALJ did not consider the record sufficient basis to

assess her with that medically determinable impairment, he states plainly that all symptoms, subjective complaints, and record evidence were considered when setting the RFC. As a result, any alleged error in the classification of fibromyalgia is harmless without also showing that it would likely change the RFC assessed. As that is not the case here, the ALJ's decision stands as it is supported by substantial evidence, and additionally because the alleged error is ultimately harmless in this case.

## V. CONCLUSION

As detailed above, the Plaintiff has not shown that the ALJ's decision is unsupported by substantial evidence or the result of incorrect legal standards to a harmful degree. Therefore, it is **ORDERED** that the decision of the Commissioner is **AFFIRMED** and the Plaintiff's complaint is **DISMISSED**. Judgment consistent with this opinion to issue on even date.

**SO ORDERED.**

Dated September 18, 2018.

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**